IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter 11 |
| Archdiocese of Milwaukee, | Bankruptcy Case No. 11-20059-SVK |
| Debtor. | |

| | |
|---|---|
| Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, | Adv. Proc. No. 11-02459-SVK |
| | District Court Case No. 13-CV-179 |
| Appellant, | |
| vs. | |
| Official Committee of Unsecured Creditors, | |
| Appellee. | |

**BRIEF OF APPELLEE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian Brown (CA Bar No. 205132)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jstang@pszjlaw.com
          gbrown@pszjlaw.com

DOCS_LA:267783.8 05058/003

### Table of Contents

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ............................................. 1
STATEMENT OF THE ISSUES.......................................................................................... 1
STATEMENT OF THE CASE.............................................................................................. 3
STATEMENT OF FACTS ................................................................................................... 4
    I.     The Debtor transfers $55 million to the Cemetery Trust..................................... 4
    II.    The Debtor files a voluntary petition under chapter 11 of the Bankruptcy
         Code. .......................................................................................................... 5
    III.   The Cemetery Trust sues the Committee, and the Committee countersues. ......... 5
    IV.   The Committee brings a Motion for Partial Summary Judgment on
         Appellant Listecki's RFRA and First Amendment Claims. ............................ 7
    V.    The Bankruptcy Court grants the Committee's MSJ without considering or
         ruling on the substantial burden issue as planned. .............................. 11
ARGUMENT.................................................................................................................... 12
    I.     This Interlocutory Appeal Is Impermissible Under Settled Case Law, and
         Should Be Dismissed. ......................................................................... 12
         A.    There is no substantial ground for difference of opinion on any of
             the controlling questions of law................................................. 14
         B.    The resolution of the questions will not materially advance the
             termination of the Cemetery Trust litigation ............................. 16
    II.    Summary Judgment as a Matter of Law Was Proper for the Claims under
         the Religious Freedom Restoration Act and Should Be Affirmed .................... 17
         A.    RFRA Does Not Create a Cause of Action Against a Non-
             Government Actors Like the Committee.................................... 18
         B.    RFRA May Not Be Applied to Modify, Preempt or Trump State
             Law ..................................................................................... 34
    III.   Summary Judgment Was Appropriately Granted Against the Appellant for
         Claims Under the First Amendment Free Exercise Clause and Should Be
         Affirmed............................................................................................... 37
          A.    The First Amendment Is No Defense to Claims Between Private
             Parties. .................................................................................. 37
         B.    Appellant Listecki's First Amendment Arguments Also Fail on the
             Merits ................................................................................... 40
    IV.   The Court Below Did Not Address Whether There Is a Substantial
         Burden, and, Even If It Had, the Issue Is Unripe ................................. 47
CONCLUSION................................................................................................................. 49

DOCS_LA:267783.8 05058/003

*Table of Authorities*

## CASES

*Abbott Labs v. Gardner,*
    387 U.S. 136 (1967)..................................................................................56

*Adelphia Comm. Corp.,*
    544 F.3d 420 (2d Cir. 2008)......................................................................23

*Ahrenholz v. Board of Trustees of Univ. of Illinois,*
    219 F.3d 674 (7th Cir. 2000) ...................................................................15

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)..................................................................................36

*Blixseth v. Brown,*
    470 B.R. 562 (D. Mont. 2012)..................................................................23

*Boerne v. Flores,*
    521 U.S. 507 (1997).............................................................................passim

*Boyd v. Kind Par, LLC,*
    2011 WL 5509873 (W.D. Mich. Nov. 10, 2011).....................................14

*Brownson v. Bogenschutz,*
    966  F. Supp. 795 (E.D. Wis. 1997)..........................................................22

*Butner v. United States,*
    440 U.S. 48 (1979)....................................................................................39

*Caminetti v. U.S.,*
    242 U.S. 470 (1917)..................................................................................34

*Church of Lukumi Babalu Aye v. City of Hialeah,*
    508 U.S. 520 (1993)..................................................................................47

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985)..................................................................................47

*Civil Liberties for Urban Believers v. City of Chicago,*
    342 F.3d 752 (7th Cir. 2003) .............................................................46, 47

*Committee of Tort Litigants v. Catholic Diocese of Spokane (In re Catholic Diocese of Spokane),*
    329 B.R. 304 (Bankr. E.D. Wash. 2005) ................................................42

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978)..................................................................................15

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,*
    438 U.S. 59 (1978)....................................................................................55

*EEOC v. Catholic Univ. of Am.,*
    83 F.3d 455 (D.C. Cir. 1996) ...................................................................38

*Employm't Div. v. Smith,*
    494 U.S. 872 (1990).............................................................................38, 47

*Flagg Bros., Inc. v. Brooks,*
    436 U.S. 149 (1978)..................................................................................44

*Fuel Oil Supply and Terminaling v. Gulf Oil Corp.,*
    762 F.2d 1283 (5th Cir. 1985) ..................................................................25

*General Conference Corp. of Seventh-Day Adventists v. McGill,*
    617 F.3d 402 (6th Cir. 2010) ....................................................................37

DOCS_LA:267783.8 05058/003

*Grace United Methodist Church v. City of Cheyenne*,
451 F.3d 643 (10th Cir. 2006) ...................................................................... 56

*Guinan v. Roman Catholic Archdiocese*,
42 F. Supp. 2d 849 (S.D. Ind. 1998) ............................................................ 38

*Hall v. American Nat. Red Cross*,
86 F.3d 919 (9th Cir. 1996) .................................................................... 27, 37

*Hankins v. Lyght*,
441 F.3d 96 (2d Cir. 2006) ........................................................................... 37

*Harlow v. Fitzgerald*,
457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ................................ 31

*Hartford Underwriters Ins. Co. v. Union Planters Bank*,
530 U.S. 1 (2000) ........................................................................................ 35

*Harvey v. Harvey*,
949 F.2d 1127 (11th Cir. 1992) .................................................................... 43

*Heller Ehrman LLP v. Orrick, Herrington & Sutcliffee LLP (In re Heller Ehrman LLP)*, CV 13-01775 CRB (N.D. Cal. May 21, 2013) .................................................. 13

*Hosanna-Tabor Evangelical Lutheran Church School v. EEOC*,
___ U.S. ___, 132 S.Ct. 694, 181 L.Ed. 2d 650 (2012) ........................ 36, 53, 54

*In re Archdiocese of Milwaukee*,
485 B.R. 385 (Bankr. E.D. Wis. 2013) ................................................... passim

*In re Auto Dealer Servs., Inc*.,
81 B.R. 94 (M.D. Fla. 1987) ......................................................................... 17

*In re Barman*,
252 B.R. 403 (Bankr. E.D. Mich. 2000) ........................................... 27, 29, 33

*In re Bloch*,
207 B.R. 944 (Bankr. D. Colo. 1997) ........................................................... 48

*In re Dow Corning Corp*.,
255 B.R. 445 (E.D. Mich. 2000) ................................................................... 25

*In re Drexel Burnham Lambert Grp*.,
138 B.R. 717 (Bankr. S.D.N.Y. 1992) .......................................................... 31

*In re Gomes*,
219 B.R. 286 (Bankr. D. Or. 1998) ............................................................... 48

*In re Matter of Morris*,
30 F.3d 1578 (7th Cir. 1994) ....................................................................... 33

*In re Meyer*,
467 B.R. 451 (Bankr. E.D. Wis. 2012) ......................................................... 51

*In re Navarro*,
83 B.R. 348 (Bankr. E.D. Pa. 1988) ............................................................. 51

*In re Newman*,
183 B.R. 239 (Bankr. D. Kan. 1995) ....................................................... 50, 51

*In re Pac. Forest Products Corp*.,
335 B.R. 910 (S.D. Fla. 2005) ...................................................................... 17

*In re Roman Catholic Archbishop of Portland in Oregon*,
335 B.R. 842 (Bankr. D. Or. 2005) .......................................................... 40, 48

*In re Smart World Technologies, LLC*,
423 F.3d 166 (2d Cir. 2005) ......................................................................... 23

iii

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) ............................................................................. 16, 55

*In re Trinsum Grp., Inc.*,
  467 B.R. 734 (Bankr. S.D.N.Y. 2012) .................................................................. 13, 14

*In re Turner*,
  193 B.R. 548 (Bankr. N.D. Cal. 1996) ......................................................................... 51

*In re Walnut Equip. Leasing, Co.*,
  2000 WL 1456951 ............................................................................................................ 31

*In re Young*,
  141 F.3d 854 (8th Cir. 1998) .............................................................................. 51, 52

*International Church of Foursquare Gospel v. San Leandro*,
  673 F.3d 1059 (9th Cir. 2011) ...................................................................................... 57

*Int'l Union of Operating Eng'rs, Local 150 v. Ward*,
  563 F.3d 276 (7th Cir. 2009) ......................................................................................... 35

*Jackson v. Metro. Edison Co.*,
  419 U.S. 345 (1974) .......................................................................................................... 44

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir.1990) ............................................................................................... 15

*Lamie v. U.S. Trustee*,
  540 U.S. 526 (2004) .......................................................................................................... 35

*Lonneker Farms, Inc. v. Klobucher*,
  804 F.2d 1096 (9th Cir. 1986) .............................................................................. 30, 31

*Lugar v. Edmondson Oil Co., Inc.*,
  457 U.S. 922 (1982) .......................................................................................................... 44

*McCarthy v. Fuller*,
  Nos. 12-2157, 12-2257, 12-2262, 2013 WL 1442293 (7th Cir. April 10, 2013) ..... 53

*McCulloch v. State of Md.*,
  17 U.S. 316 (1819) ............................................................................................................ 27

*Morneau v. Connecticut*,
  605 F.Supp.2d 372 (D. Conn. 2009) ............................................................................. 31

*Newby v. Quaterman*,
  325 Fed. Apex. 345 (5th Cir. 2009) .............................................................................. 56

*Paloian v. LaSalle Bank Nat'l Ass'n (In re Doctors Hosp. Of Hyde Park, Inc.)*,
  463 B.R. 93 (N.D. Ill. Bankr. 2011) ............................................................................. 14

*Pomerleau v. West Springfield Public Schools*,
  362 F.3d 143 (1st Cir. 2004) .......................................................................................... 54

*Rayburn v. Hogue*,
  241 F.3d 1341 (11th Cir. 2001) ..................................................................................... 43

*Rweyemamu v. Cote*,
  520 F.3d 198 (2d Cir. 2008) ........................................................................................... 37

*Segarra-Miranda v. Perez-Padro*,
  482 B.R. 59 (D. Puerto Rico 2012) ............................................................................... 54

*Sherbert v. Verner*,
  374 U.S. 398 (1963) .................................................................................................. 46, 47

*Shipping Corp. of India, Ltd. v. American Bureau of Shipping*,
  752 F.Supp. 173 (S.D.N.Y. 1990) ................................................................................. 16

iv

*St. Johns United Church of Christ*,
    502 F.3d 616 (7th Cir. 2007) ................................................................. 47

*Starnes v. Capital Cities Media, Inc.*,
    39 F.3d 1394 (7th Cir. 1994) ........................................................... 22, 23

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) ................................................................. 37

*Szeklinski v. Neary*,
    No. 07-C-222, 2007 WL 777539 (E.D. Wis. Mar. 12, 2007) .................... 30

*Tomic v. Catholic Diocese of Peoria*,
    442 F.3d 1036 (7th Cir. 2006) ................................................................ 36

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) ............................................................................... 35

*Tower v. Glover*,
    467 U.S. 914 (1984) ............................................................................... 43

*United States v. Kras*,
    409 U.S. 434 (1973) ............................................................................... 50

*Vision Church v. Vill. Of Long Grove*,
    468 F.3d 975 (7th Cir. 2006) ................................................................. 46

*Warner v. City of Boca Raton*,
    887 So. 2d 1023 (Fla. 2004) .................................................................. 37

*Williams Island Synagogue, Inc. v. City of Aventura*,
    222 F.R.D. 554 (S.D. Fla. 2004) ........................................................... 37

*World Outreach Ministries Center v. City of Chicago*,
    591 F. 3d 531 (7th Cir. 2009) ................................................................ 56

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) ............................................................... 38

*Wyatt v. Cole*,
    504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) ........................ 31

*Zuni Pub. Sch. Dist. No. 89 v. Dept. of Educ.*,
    550 U.S. 81 (2007) ................................................................................. 20

## STATUTES

11 U.S.C. § 101 ........................................................................... 2, 19, 20

11 U.S.C. § 330 ...................................................................................... 22

11 U.S.C. § 502 ...................................................................................... 36

11 U.S.C. § 503 ...................................................................................... 22

11 U.S.C. § 541 ................................................................................ passim

11 U.S.C. § 542 ................................................................................. 2, 6, 7

11 U.S.C. § 544 ................................................................................ passim

11 U.S.C. § 547 ......................................................................... 2, 7, 16, 42

11 U.S.C. § 548 ................................................................................ passim

11 U.S.C. § 549 ......................................................................... 2, 7, 42

11 U.S.C. § 550 ........................................................................... 6, 7, 36

11 U.S.C. § 704 ...................................................................................... 26

11 U.S.C. § 1103 ....................................................................... 21, 26, 29

11 U.S.C. § 1104 .................................................................................... 24

28 U.S.C. § 157 ...................................................................................... 12

v

28 U.S.C. § 158.................................................................................................... 1, 12, 13
28 U.S.C. § 1292...................................................................................................... 13, 15
42 U.S.C. § 2000bb................................................................................................... passim
Pub. L. No. 106-274, 114 Stat. 803 (2000)................................................................. 36
Religious Liberty and Charitable Donation Protection Act of 1998............................. 45
Wis. Stat. § 242..................................................................................................... 6, 36
Wis. Stat. § 701 ............................................................................................... 6, 30, 35

## OTHER AUTHORITIES

145 Cong. Rec. H5580-02,
 (daily ed. July 15, 1999) ......................................................................................... 41
Mary Jo Newborn Wiggins, A Statute of Disbelief?: Clashing Ethical Imperatives in Fraudulent
 Transfer Law,
 48 S.C. L. Rev. 771 (1997)...................................................................................... 49
*Protecting Religious Freedom After Boerne v. Flores: Hearing Before the Subcomm. on the*
 *Const. of the House of Rep. Comm. On the Judiciary,*
 105th Cong. 55 (1997)............................................................................................. 40
Timothy Zick, *Statehood as the New Personhood: The Discovery of Fundamental "States'*
 *Rights,"*
 46 Wm. & Mary L. Rev. 213, 218-19 (Oct. 2004)................................................... 34
U.S. Const. Amend. 1......................................................................................... passim
U.S. Const. Art. V ................................................................................................. 39
United States Department of Justice,
 *Handbook for Chapter 7 Trustees,* at 1-1 (2012)..................................................... 29
W.I. Const. § 18 .................................................................................................... 42

## RULES

Fed. R. Bankr. P. 7004.............................................................................................. 23
Fed. R. Bankr. P. 8003.............................................................................................. 12
Fed. R. Bankr. P. 9033.............................................................................................. 13

DOCS_LA:267783.8 05058/003

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION[1]

This is an appeal from the *Decision on Motion for Summary Judgment and Order Thereon* (the "Order Granting Partial Summary Judgment") entered by the United States Bankruptcy Court for the Eastern District of Wisconsin (the "Bankruptcy Court") in Case No. 11-02459-SVK on January 17, 2013. The Court assumed jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(3). *Archbishop Jerome E. Listecki v. Official Committee of Unsecured Creditors (In re Archdiocese of Milwaukee)*, No. 13-CV-179 [Docket No. 2] (E.D. Wis. April 1, 2013). As is set forth more fully below, the Official Committee of Unsecured Creditors (the "Committee") asserts that the standards for appellate review of an interlocutory order of the Bankruptcy Court have not been met. Accordingly, this Court lacks jurisdiction over this appeal, and the appeal should be dismissed.

## STATEMENT OF THE ISSUES

1.      Does the plain language and history of the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb et seq. ("RFRA"), limit causes of action under RFRA to those brought against government actors, and, therefore, not permit a cause of action against the private entity, the Official Committee of Unsecured Creditors?

2.      Does the plain language and history of RFRA, which was intended to mimic the operation of the First Amendment to the United States' Constitution (the "First Amendment") permit actions solely between private parties?

3.      Can Archbishop Listecki ("Appellant Listecki"), as trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust (the "Cemetery Trust"),

---

[1] The Committee does not dispute the standard of review set forth in Appellant Listecki's Brief.

Case 2:13-cv-00179-RTR   Filed 05/29/13   Page 8 of 57   Document 19

circumvent the Supreme Court's decision in *Boerne v. Flores*, 521 U.S. 507 (1997), which held that RFRA cannot be applied to state law on federalism, separation of powers, and Article V grounds, by modifying, preempting, or eliminating state law through application of RFRA to a bankruptcy proceeding?

      4.      Are the provisions of the 11 U.S.C. § 101, et. seq. (the "<u>Bankruptcy Code</u>") (including, but not limited to, sections 541, 542, 544, 547, 548 and 549) neutral and generally applicable and, therefore, under the First Amendment, applicable to all debtors, even those that are religious?

      5.      Does a religious organization's choice to file voluntarily a petition under chapter 11 of the Bankruptcy Code to protect its assets impose only an incidental burden on the free exercise of religion, and, therefore, bar a RFRA claim?

      6.      Can a religious organization pick and choose which neutral and generally applicable provisions of the United States Bankruptcy Code apply to its voluntary bankruptcy proceeding?

      7.      Can a religious organization transfer assets in violation of state law that under the Bankruptcy Code determines what assets are required to be made available to a debtor's creditors?

      8.      Did the Bankruptcy Court's *Order Granting Partial Summary Judgment* involve a controlling issue of law over which there is a substantial ground for difference of opinion, and will an immediate appeal from that order materially advance the termination of the litigation?

2

## STATEMENT OF THE CASE

Appellant Listecki has filed this untimely and inappropriate interlocutory appeal to avoid the application of neutral and generally applicable law. The Committee argues in this brief that the appeal is premature and inappropriate. The following Statement of the Case is offered if this Court assumes jurisdiction over this interlocutory appeal.

In 2008, the Archdiocese of Milwaukee (the "Archdiocese" or the "Debtor") transferred approximately $55 million into a trust, the Cemetery Trust, which the Debtor contends it established for the perpetual care of its cemeteries. The Committee contends, among other things, that the transfer is both actually and constructively fraudulent under the Bankruptcy Code and Wisconsin law, that the Cemetery Trust is a voidable self-settled trust in which the Debtor is a beneficiary and that the funds transferred into the Cemetery Trust are property of the Debtor's estate. In a lawsuit that Appellant Listecki filed against the Committee, Appellant Listecki contends that avoiding the $55 million transfer pursuant to Wisconsin fraudulent transfer law or applying any provision of the Bankruptcy Code by which the funds in the Cemetery Trust could be determined to be property of the Debtor's estate will substantially burden the Cemetery Trust's free exercise of religion in violation of RFRA and the First Amendment. The Committee sought summary judgment against Appellant Listecki's First Amendment and RFRA defenses, which was granted by the Bankruptcy Court January 17, 2013. This Court should affirm the Bankruptcy Court's decision because it was correctly decided and was based on sound reasoning and solid doctrine.

Appellant Listecki asks this Court for unprecedented relief. He asks this Court to find that a religious entity can create a self-settled trust for its own benefit, transfer all of its assets

3

Case 2:13-cv-00179-RTR   Filed 05/29/13   Page 10 of 57   Document 19

into that trust for no consideration, voluntarily file for bankruptcy and then claim that the fraudulent conveyance provisions of state law and/or the Bankruptcy Code cannot be used to recover those fraudulently transferred assets for the benefit of the estate. He is asking this Court to draft and enact a new chapter of the Bankruptcy Code that is applicable to religious debtors and religious debtors alone. The Court cannot and should not do that.

The simple reality is that even if this appeal were timely and appropriate, the Bankruptcy Code and Wisconsin law apply to the Cemetery Trust, because neither the Free Exercise Clause nor RFRA offers relief. For the reasons below, the Committee asks this Court to deny the request to appeal and, if it finds an appeal is appropriate and timely, to affirm the Bankruptcy Court's *Order Granting Partial Summary Judgment.*

## STATEMENT OF FACTS

### I.     The Debtor transfers $55 million to the Cemetery Trust.

On April 2, 2007, the Archdiocese of Milwaukee, as trustor, and Timothy M. Dolan, the former Archbishop of Milwaukee, in his official capacity as Archbishop, as trustee, executed the *Trust Agreement Creating the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust.*[2] [Appellee's Appendix I (Excerpts of Record) ("ER"), Tab 3, Doc. No. 13-2, at 120-128.][3] In March 2008, the Debtor transferred over $55 million into a Cemetery Trust account at U.S. Bank. [*First Amended Answer to Amended Complaint and Affirmative Defenses; And First*

---

[2] The Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust shall be referred to as the "Cemetery Trust."

[3] Except as otherwise indicated, all references are to "ER" are to the record that was transmitted from the Bankruptcy Court to the District Court which contains the portions of the record designated by the Appellant. The "Doc. No." is the document number given to the item by the District Court and the page numbers cited are to the consecutive pages given to all the excerpts of record transmitted to the District Court.

4

*Amended Counterclaims*, at ¶ 43, ER, Tab 4, Doc. No. 13-4, at 54; *Answer and Affirmative Defenses to First Amended Counterclaims*, at ¶ 43, ER, Tab 5, Doc. No. 13-4, at 101].

## II.     The Debtor files a voluntary petition under chapter 11 of the Bankruptcy Code.

On January 4, 2011, the Archdiocese filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Committee was appointed on January 24, 2011. [ER, Tab 6, Doc. No. 13-9, at 230-231].

## III.    The Cemetery Trust sues the Committee, and the Committee countersues.

On June 28, 2011, the Cemetery Trust filed its Complaint against the Committee. [ER, Tab 7, Doc. No. 13-1, at 14-21]. The Complaint was amended on January 13, 2012 to substitute the Archbishop Jerome E. Listecki of the Archdiocese of Milwaukee (in his capacity as trustee of the Cemetery Trust) as plaintiff.  [ER, Tab 8, Doc. 13-1, at 168-182]. The Amended Complaint sought a declaration that neither the Cemetery Trust, nor the assets in the Cemetery Trust are property of the Debtor's estate under Bankruptcy Code section 541.  Pursuant to Count III of the Amended Complaint, Appellant Listecki also sought a declaration that the use of the Bankruptcy Code to make the assets of the Cemetery Trust property of the estate would violate RFRA and/or the First Amendment.

After the Complaint was filed, the Debtor and the Committee entered into an agreement whereby the Committee agreed to defend Appellant Listecki's allegations and pursue any affirmative recovery that the Debtor's estate might have against the Cemetery Trust (the "Standing Stipulation"). [ ER, Tab 9, Doc. No. 13-1, at 192-197; ER, Tab 10, Doc. No. 13-1, at 200-202]. The Standing Stipulation provided:

5

Consistent with the recitals set forth in paragraphs A through F, above, the Parties agree and stipulate as follows:

1. The Debtor is not required to assert any Avoidance and Turnover Claims in the Adversary Proceeding.

2. The Committee may defend against the allegations and claims for relief in the Amended Complaint **on behalf of the Debtor's estate**.

3. The Committee is granted derivative standing to assert and litigate the Avoidance and Turnover Claims against the Archbishop **for the benefit of the Debtor's estate**, including, but not limited to, any Avoidance and Turnover Claims that, if not for the Court's order approving this Stipulation, the Committee would not have had standing to bring because those Avoidance and Turnover Claims belong to the Debtor's estate.

[ER, Tab 9, Doc. No. 13-1, at 194 (emphasis added)].

On April 11, 2012, the Committee filed its *First Amended Answer to Amended Complaint and Affirmative Defenses; and First Amended Counterclaims* [ER, Tab 4, Docket No. 13-4, at 17-87], in which it sought, among other things: (a) a declaration that the Cemetery Trust is void under state law (Wis. Stat. § 701.06 (6)) because it is a self-settled trust in which the Debtor is a beneficiary and that that the assets in the Cemetery Trust are therefore property of the estate and are subject to turnover under Bankruptcy Code section 542 (First Counterclaim); (b) a declaration  that the assets in the Cemetery Trust are property of the estate pursuant to sections 541 (a)(1) and 544 (a) of the Bankruptcy Code and Wisconsin Statutes section 701.06 (6) (Second Counterclaim); (c) to avoid and recover the $55 million transfer as a fraudulent transfer pursuant to Bankruptcy Code sections 548 (e)(1) and 550 (Ninth Counterclaim); (d) to avoid the transfer to the Cemetery Trust under Wisconsin Statutes sections 242.04(1)(a), 242.04(1)(b), 242.05(1) and 242.07 (Sixth-Eighth Counterclaims); (e)  to recover subsequent transfers to the Cemetery Trust as fraudulent transfers (Tenth-Fifteenth Counterclaims), and (f) and to recover

preferential transfers and unauthorized post petition transfers pursuant to sections 547 and 549 of the Bankruptcy Code (Sixteenth-Seventeenth Counterclaims).

Furthermore, in its affirmative defenses to Count III of the Amended Complaint, the Committee contended that federal bankruptcy laws (and specifically Bankruptcy Code sections 541, 542, 544, 547, 548, 549 and 550) are neutral, generally applicable laws which are valid under the Religion Clauses of the First Amendment (Affirmative Defense 17), RFRA is unconstitutional as applied to state law (Affirmative Defense 20), and RFRA is not applicable when the government is not party to the suit (Affirmative Defense 22). On May 2, 2012, Appellant Listecki filed his *Answer and Affirmative Defenses to First Amended Counterclaims*. [ER, Tab 5, Doc. No. 13-4, at 95-122].

## IV.    The Committee brings a Motion for Partial Summary Judgment on Appellant Listecki's RFRA and First Amendment Claims.

On May 25, 2012, the Committee filed its *Motion for Partial Summary Judgment on Count III of Amended Complaint* (the "MSJ"). [ER, Doc. 13-2, at 85-130]. The MSJ sought a summary adjudication of Count III of the Amended Complaint and the Committee's Seventeenth Affirmative Defense (federal bankruptcy laws (and particularly sections 541, 542, 544, 547, 548, 549 and 550) are neutral, generally applicable laws, which are valid under the Religion Clauses of the First Amendment); Twentieth Affirmative Defense (RFRA is unconstitutional as applied to state law) and Twenty-Second Affirmative Defense (RFRA is not applicable when the government is not party to the suit).

On July 9, 2012, Appellant Listecki filed his *Response to the Committee's MSJ* (the "Response") [ER, Doc. No. 13-7, at 28-75], as well as the *Declaration of Archbishop Listecki*

7

[ER, Doc. No. 13-7, at 76-87] (the "<u>Listecki Declaration</u>").  The Committee's MSJ raised purely

legal questions and did not seek summary judgment on the factual issue of whether permitting

the Committee to recover the $55 million fraudulently transferred to the Cemetery Trust would

impose a substantial burden on the Cemetery Trust's free exercise of religion. In his Response,

however, Appellant Listecki briefed this issue, submitted the Listecki Declaration  in support and

asked the Bankruptcy Court to enter summary judgment in its favor on the entire case on the

basis of the application of RFRA and the First Amendment (the "<u>Cross-MSJ</u>").

Because of the intensely factual nature of the inquiry as to the substantial burden issue,

prior to the deadline for the Committee to file its reply to Appellant Listecki's Response, the

Bankruptcy Court ordered that Appellant Listecki's Cross-MSJ **would not** go forward and would

instead be briefed only after the Bankruptcy Court determined the purely legal issues raised in

the Committee's MSJ.  Specifically, at a status conference held on October 18, 2012, at which

the Bankruptcy Court considered the deadline and scope of the Committee's reply to the

Cemetery Trust's Response, the following exchange took place:

> MR. BROWN [COUNSEL FOR THE COMMITTEE]:  I would also add that we're happy to respond to the legal issues in the short term, but the way this was left before the mediation began and everything was stayed was, the committee had moved for a summary judgment based purely on the issue of RFRA doesn't apply in a situation where the Government is not a party to a lawsuit and that the First Amendment does not bar the application of the Bankruptcy Code to pursue avoidance actions because it's a neutral generally applicable law. Purely legal issues, there's no factual disputes whatsoever.
>
> The Cemetery Trust opposed, filed an opposition to our motion for summary judgment, a partially summary judgment on those legal issues.  We were just moving for a dismissal of the RFRA claim that the Cemetery Trust initiated.  The Cemetery Trust opposed that and the move for a cross summary judgment on the entire action based on the application of RFRA.  In order for RFRA to apply among other things, the Cemetery Trust has to establish that whatever will happen

8

here in the Cemetery Trust litigation will create a substantial burden on the exercise of religion. We believe that creates huge factual issues that are going to require discovery, and moreover are simply premature for the court to determine, because simply moving the Cemetery Trust into the estate doesn't do anything to burden religion, it just means that the estates gets to keep using the money however it wants. It can still use it to provide perpetual care for cemeteries.

It's only when the court determines what the amount of the claims are, what the other assets are for distribution that it can be determined what portion if any of the cemetery trust might be diverted for purposes other than cemetery care and therefore might create any burden on religion.

Moreover, there has to be literally expert testimony and discovery on the issue of well, what is a substantial burden. If we took $1,000 from the cemetery trust, does that create a substantial burden, $10,000, a million, 10 million, that's going to involved testimony by cemeterians, because the committee's position is that even if RFRA did apply and that if you took all the money out of the Cemetery Trust and used it possibly for other purposes that there's some number that you could still give adequate care to the cemeteries and not "substantially burden religion."

All of those issues have to be dealt with on discovery, they're factually intensive, and so our opposition to the Cemetery Trust cross motion for summary judgment is simply, you know, it's completely premature and we would need a lot of discovery. We can respond to the legal issues on whether or not RFRA applies as a legal matter and are happy to do that, you know, in a reasonably short period of time based on Marci Hamilton's schedule, but the cross motion on the disposition of the whole case based on whether there's a substantial burden on religion as you can imagine, that's a lot more factual discovery down the line.

[ER, Tab 14, Doc. No. 13-14, at 218-220.] Counsel to Appellant Listecki then asked the

Bankruptcy Court to go forward with his Cross-MSJ [ER, Tab 14, Doc. No. 13-14, at 222, lines

10-19.] In response Committee counsel replied:

MR. BROWN: Your Honor, we – my position is that it's premature, that we haven't been permitted an opportunity to do discovery and that would be our position and any response to the cross motion for summary judgment is there are factual issues raised which discovery has not been permitted on yet.

THE COURT: But not as to the pure legal issue of whether RFRA applies if the Government is not a party.

MR. BROWN: Correct. Two issues that the committee raised in its initial motion, does RFRA apply when the Government is a party, you know, that's based – our position is based on a Judge Posner decision in the 7th Circuit, you know, that's an

9

Case 2:13-cv-00179-RTR   Filed 05/29/13   Page 16 of 57   Document 19

easy motion we believe for the court to decide, there's not facts to consider other than –

> . . . .

> MR. BROWN: And a particular section 544, which is how we're coming in, you know, on the avoidance action whether that is barred – the application of that is barred by RFRA, or whether or not RFRA doesn't – you know, doesn't apply – I'm sorry, whether that's barred by the First Amendment because it somehow creates a burden on the free exercise of religion. The standard, and we've talked about it in the briefs, are that the First Amendment only bars application of a law that specifically targets religion. It doesn't bar neutral generally applicable law, which is what the Bankruptcy Code is. Those are the issues that we moved on and no facts are at issue or raised.

[ER, Tab14, Doc. No. 13-14, at 222-223.] The Bankruptcy Court then continued:

> THE COURT: Okay. Well, those are the two issues that I will ask for a reply on and I'll be looking for that by November 23rd.

[ER, Tab 14, Doc. No. 13-14, at 223-224, lines 24-1.] The Bankruptcy Court then dealt with the Cross-MSJ, which counsel to Appellant Listecki _agreed on the record_ would be postponed and would not be briefed in connection with the MSJ:

> THE COURT: . . . [S]o now you've got a cross motion with other issues. Does it make sense to wait for the decision on this issue before we set briefing considerations on the cross motion?

> MR. BROWN [COUNSEL TO APPELLANT LISTECKI]: Your Honor, I think it does. . . .

> THE COURT: I think Attorney Nixon is going to agree with you.

> MR. NIXON: I'm nodding my head, and if the court can't tell the direction of the rattle coming from it, it's up and down in the affirmative.

[ER, Tab 14, Doc. No. 13-14, at 225-226.] Ultimately, the Bankruptcy Court stated:

> THE COURT: . . . We are going to back burner the issues on the cross motion for summary judgment with all the factual issues and stipulated facts, et cetera.

> MR. NIXON: Your Honor, that is probably the best use of all the parties time at this point.

[ER, Tab 14, Doc. No. 13-14, at 227.] This agreement was then memorialized in the Bankruptcy

Court's Minute Order, which states:

> The Court confirmed that the Committee's Reply should be limited to the two
> issues that Attorney Brown described on the record. The parties will contact the
> Court to schedule a hearing on this Motion, to be held after December 3, 2012. A
> briefing schedule on the Plaintiff's cross-motion for summary judgment will be
> issued after a decision is issued on the Committee's summary judgment motion.

[ER, Tab 15, Doc. No. 13-7, at 96.] Accordingly, the Committee's reply was not to address the

substantial burden issues. The Committee filed its reply on November 21, 2012 (the "Reply").

[ER, Tab 18, Case No. 11-02459-svk, Docket No. 75].

## V. The Bankruptcy Court grants the Committee's MSJ without considering or ruling on the substantial burden issue as planned.

On January 17, 2013, the Bankruptcy Court granted the Committee's MSJ (the "Order

Granting Partial Summary Judgment"). [ER, Tab 1, Doc. No. 13-7, at 128-139; ER, Tab 2, Doc.

No. 13-7, at 140-141.] The Bankruptcy Court granted the MSJ because it correctly concluded

that the Committee is not a government actor, nor is it acting under color of law. *See In re

Archdiocese of Milwaukee*, 485 B.R. 385, 392 (Bankr. E.D. Wis. 2013). Because RFRA and the

First Amendment only apply to suits where the government is a party, the Bankruptcy Court

correctly noted that it would be inappropriate to reach the question whether the law imposed a

substantial burden, which is relevant only when there is a government actor in the dispute. *Id.* at

1. The Bankruptcy Court further held that RFRA is inapplicable to the claims here because

although the Bankruptcy Code is federal, estate property determinations are determined by state

law, which is beyond the reach of RFRA. *Id.* at *6. Lastly, it held that the Bankruptcy Code is

neutral and generally applicable, does not target religion, and could properly be applied to the Cemetery Trust. *Id.* at 7. Appellant Listecki appeals from this decision.

## ARGUMENT

**I.      This Interlocutory Appeal Is Impermissible Under Settled Case Law, and Should Be Dismissed.**

Appellant Listecki has misstated the standard for granting an interlocutory appeal from a bankruptcy court and the scope of the bankruptcy court's power to hear the issues involved in this case. Bankruptcy judges are permitted to hear non-core proceedings that are otherwise "related to a case under title 11." 28 U.S.C. § 157(c)(1).[4] In such instances, "any final order or judgment shall be entered by the district judge." *Id.* An order granting partial summary judgment in a fraudulent conveyance action is not, however, a final order or judgment. It is an interlocutory order. *See Heller Ehrman LLP v. Orrick, Herrington & Sutcliffee LLP (In re Heller Ehrman LLP)*, Order Denying Motion for De Novo Review, CV 13-01775 CRB, Docket No. 7 (N.D. Cal. May 21, 2013). As such, the Bankruptcy Court was within its authority to enter its interlocutory *Order Granting Partial Summary Judgment*, and the only avenue for this Court to review it is pursuant to 28 U.S.C. § 158(a)(3). *See also In re Trinsum Grp., Inc.*, 467 B.R. 734, 737-39 (Bankr. S.D.N.Y. 2012) ("There is no absolute right to an appeal from an interlocutory order; rather an appeal from an interlocutory order is permitted only with leave of the district court pursuant to 28 U.S.C. § 158(a)(3) and Rule 8003 of the Federal Rules of Bankruptcy Procedure. Contrary to the argument of the [Plaintiff], nothing in the Bankruptcy Code or in

---

[4] 28 U.S.C. § 157(c)(1) provides, "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of facts and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

12

Rule 9033 *requires* the bankruptcy court to file proposed findings of fact and conclusions of law, and to trigger immediate district court review, at the time an interlocutory order dismissing fewer than all claims is first entered."); *Boyd v. Kind Par, LLC*, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment . . . does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions.").[5]

On April 1, 2013, this Court entered its *Decision and Order,* which granted Appellant Listecki's motion to appeal the *Order Granting Partial Summary Judgment* pursuant to 28 U.S.C. § 158(a)(3). [6] An appeal of an interlocutory order of the Bankruptcy Court may be granted only when two conditions are met: (1) the lower court's order involves a controlling question of law over which there is a substantial ground for difference of opinion, and (2) an immediate appeal from the order may materially advance the termination of the litigation. *Id*. at 72-73; 28 U.S.C. § 1292(b).

Each of section 1292(b)'s requirements are to be strictly construed, so that "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing

---

[5] The court in *Paloian v. LaSalle Bank Nat'l Ass'n (In re Doctors Hosp. Of Hyde Park, Inc.),* 463 B.R. 93 (N.D. Ill. Bankr. 2011) questioned the bankruptcy court's authority to grant summary judgment in a case in which it did not have authority to enter a final judgment. That holding was dicta given that the court ultimately denied the motion for summary judgment. Moreover, assuming that the Bankruptcy Court's order is treated as proposed findings of fact and conclusions of law, the Bankruptcy Court is not required to submit them to the District Court for review until a final determination is to be made in the underlying litigation. *See In re Trinsum Group, Inc.,* 467 B.R. at 738 ("Although the Bankruptcy Code and Rules may permit a bankruptcy court to accelerate review of an otherwise interlocutory order by filing proposed findings of fact and conclusions of law before the end of the case, the strong federal policy against piecemeal appeals ordinarily counsels against it unless judicial efficiency or other factors support it.").

[6] In its order, the Court invited the parties to brief this issue further in connection with this appeal, stating, "Preliminarily, the Court is satisfied that this standard is met, such that it will grant leave to appeal. In the course of briefing, the parties are free to pursue further arguments on this point, in addition to the alternative grounds raised by the Trustee's motion. The Court will make more explicit findings on the proper basis for this appeal in connection with a substantive ruling on the merits." *Id*. at 73.

appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). As is set forth below, the neither element has been satisfied. Accordingly, the Committee asks this Court to dismiss the appeal.

**A.    There is no substantial ground for difference of opinion on any of the controlling questions of law.**

Appellate review of interlocutory orders is limited to purely abstract questions of law. *See Ahrenholz v. Board of Trustees of Univ. of Illinois*, 219 F.3d 674, 678 (7th Cir. 2000). Appellant Listecki asked for leave to appeal three questions, all of which he stated were "pure questions of law". [ER, Doc. No. 13-7, 221-279]. These questions are:

> 1. Whether the Bankruptcy Court erred in concluding that RFRA does not apply to the Committee because (a) RFRA only applies to suits in which the government is a party and (b) the Committee does not act under color of law or otherwise qualify as "government" under RFRA ("Question 1").

> 2. Whether the Bankruptcy Court erred in concluding that RFRA does not bar the Committee's claims because application of RFRA would improperly invalidate state law ("Question 2").

> 3. Whether the Bankruptcy Court erred in concluding that the relevant provisions of the Bankruptcy Code are neutral and generally applicable for purposes of the First Amendment's Free Exercise Clause, and, because neutral and generally applicable, they per se do not unduly burden the free exercise of religion ("Question 3").

[ER, Tab 16, Doc. No. 13-8, at 75-76]. Questions 1, 2 and 3 are purely legal issues. In his Brief, however, Appellant Listecki tacks on a factual issue, specifically, whether the recovery of the assets in the Cemetery Trust for the benefit of the estate will impose a substantial burden on the Cemetery Trust's free exercise of religion. This issue is not appropriate on appeal at this juncture in the litigation, because it is factual. According to the Seventh Circuit, it is "pointless" to allow

14

interlocutory appeals on questions of fact. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010). It is also inappropriate because it was explicitly excluded from the scope of briefing and from consideration below pursuant to an order of the Bankruptcy Court to which Appellant Listecki agreed. In light of the Bankruptcy Court's specific order reserving the substantial burden issue and the Cross-MSJ (as well as the Committee's rights to do additional briefing and discovery on them), it is startlingly disingenuous of Appellant Listecki to now argue that the facts contained in the declaration proffered in support of the Cross-MSJ by Archbishop Listecki are unopposed and that the Court should now decide the substantial burden issue.

Furthermore, the legislative history of 28 U.S.C. § 1292(b) indicates that the statutory prerequisite of "substantial ground for difference of opinion" is satisfied only when there is "'substantial doubt' that the [lower court's] order was correct." *Shipping Corp. of India, Ltd. v. American Bureau of Shipping*, 752 F.Supp. 173, 175 (S.D.N.Y. 1990) (citation omitted). To satisfy this element of the analysis, a movant must normally demonstrate that at least two courts interpret the relevant legal principle differently. *See In re Pac. Forest Products Corp.*, 335 B.R. 910 (S.D. Fla. 2005). Interlocutory review is not allowed simply because the issue involved is difficult or there is a lack of authority on the issue. *Id; see also In re Auto Dealer Servs., Inc.*, 81 B.R. 94, 96-97 (M.D. Fla. 1987). None of the questions for which Appellant Listecki seeks review meet the requisite standard.

With respect to Question 1, no court has ever held that a creditors' committee in chapter 11 bankruptcy case is a "government" under RFRA. *See infra*, at 21-22. Nor did Appellant Listecki cite any case in which a chapter 11 creditors' committee has been found to be acting

DOCS_LA:267783.8 05058/003

under color of law for the purpose of RFRA or the First Amendment. Finally, no court in the Seventh Circuit has ever held that RFRA is applicable to suits between private parties in any circumstance. In fact, the cases cited by Appellant Listecki in an attempt to create a contestable issue do not even address the issue. *See infra*, at 32-34.

With respect to Question 2, the Supreme Court has definitively held that RFRA may not be used to modify, preempt or trump state law. *See infra,* at 33-35. One can hardly argue that there is a genuine disagreement over an issue that the United States Supreme Court has determined.

With respect to Question 3, Appellant Listecki cites no authority for the proposition that sections 541, 544, 547 and 548 of the Bankruptcy Code are anything other than neutral and generally applicable. Again, the absence of authority on the issue is not sufficient to support an interlocutory appeal.

### B. The resolution of the questions will not materially advance the termination of the Cemetery Trust litigation

The resolution of the questions presented in this interlocutory appeal will not materially advance the termination of the Cemetery Trust litigation.[7] Whether this Court affirms or overturns the Bankruptcy Court's order, protracted litigation will continue. If the Court overturns the Bankruptcy Court's order, Appellant Listecki will still have to address the substantial burden issues. As noted above, this will require a significant amount of discovery and

---

[7] The Cemetery Trust argues disingenuously that the recent stay of the Cemetery Trust litigation pending the outcome of this appeal shows that the Committee agrees that these issues are dispositive in the litigation. What the Cemetery Trust does not disclose is that the Debtor, supported by the Cemetery Trust, asked the Bankruptcy Court to stay the litigation, which effort the Committee initially opposed. [*Archbishop v. Official Committee of Unsecured Creditors (In re Archdiocese of Milwaukee)*, Adv. P. No. 11-2459, Docket Nos. 91, 96 and. 99].

16

further briefing and hearings. Additionally, as noted below, the actual burden on the Cemetery Trust from the avoidance of the fraudulent transfer cannot be assessed until a plan of reorganization is confirmed. Therefore, the substantial burden issue is unripe, and this Court lacks jurisdiction over it.

More importantly, however, if the Court affirms the Bankruptcy Court's order, the Committee must still prove its claims that the Debtor fraudulently transferred $55 million to the Cemetery Trust and/or that the Cemetery Trust is a self-settled spendthrift trust under Wisconsin law that is subject to the claims of the Debtor's creditors. If the Committee is unsuccessful in these claims, this Court will not need to examine the Cemetery Trust's First Amendment and RFRA defenses. As such, review the Bankruptcy Court's order on an interlocutory basis is premature. This Court can review it in connection with the entry of the final judgment in the Cemetery Trust litigation. Accordingly, the Committee asks the Court to dismiss the appeal.

## II. Summary Judgment as a Matter of Law Was Proper for the Claims under the Religious Freedom Restoration Act and Should Be Affirmed

As the Bankruptcy Court ruled, Appellant Listecki's RFRA claims fail as a matter of law for two primary reasons. First, RFRA does not create a cause of action against private non-government actors. *In re Archdiocese of Milwaukee*, 485 B.R. at 392. Second, RFRA may not be applied to modify, preempt or trump state law. *In re Archdiocese of Milwaukee*, 485 B.R. at 392-93.

### A. RFRA Does Not Create a Cause of Action Against a Non-Government Actors Like the Committee.

Appellant Listecki has asserted claims under RFRA against the Committee. [Appellant's Brief at 27.] The Bankruptcy Court rejected these claims because RFRA only creates a cause of action against "a government," and the Committee is a private party. *In re Archdiocese of Milwaukee*, 485 B.R. at 392.

#### 1. The plain language of RFRA only permits relief against "a government."

RFRA provides:

> In General. ***Government*** shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

> Exception. ***Government*** may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person-(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

> Judicial relief. A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief ***against a government***. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb-1 (2012) (emphasis supplied). The plain language of this section makes it clear that a religious believer may only bring a RFRA claim against a government. The statute itself provides that relief is proper only "against a government," making it clear that Congress intended that RFRA only apply to governmental intrusions on religious belief. The plain language of a statute is the beginning and end of the necessary analysis. *Zuni Pub. Sch. Dist. No. 89 v. Dept. of Educ.*, 550 U.S. 81, 93 (2007) ("If the intent of Congress is clear and unambiguously expressed by the statutory language at issue, that would be the end of our

analysis.") (citations omitted). The language is unambiguous, and Appellant Listecki's attempt to read "private party" into the term "government" constitutes an unreasonable reading of the statute.

### 2. The Committee is not a government actor subject to a claim under RFRA.

The Bankruptcy Court correctly held that a creditors' committee in a bankruptcy proceeding is not included in the definition of "government" under RFRA. *In re Archdiocese of Milwaukee*, 485 B.R. at 391-92; 42 U.S.C. § 2000bb-2(1) ("The term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity."). The Committee is not a branch, department, agency or instrumentality of the United States. Nor is it an official (or other person acting under color of law) of any of the foregoing. Furthermore, there are no cases in the Seventh Circuit or elsewhere holding that a creditors' committee is "a government" under RFRA.

The Bankruptcy Code also treats creditors' committees as private, non-governmental actors. For example, a creditors' committee is not included in the Bankruptcy Code's definition of "governmental unit," which provides:

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101 (27). The Bankruptcy Code's treatment of a creditors' committee as a nongovernmental entity is underscored by the fact that only "persons" are eligible to serve on a creditors' committee and the Bankruptcy Code's definition of "person" specifically excludes

"governmental units," with a narrow exception that permits only certain government creditors to serve on committees. *See* 11 U.S.C. § 101(45). No governmental units are members of the Committee. [ER, Tab 6, Doc. No. 13-9, at 230-31.]

### 3. The Committee, as a private party, was not acting "under color of law", nor was there "willful participation" in joint action with government officials.

The Bankruptcy Court applied the governmental nexus test to determine if the Committee was acting under color of law; if there was a sufficient nexus between the private entity and the government, the private party could be said to be acting under color of law. *In re Archdiocese of Milwaukee*, 485 B.R. at 390-91. The Bankruptcy Court held that the Committee was not acting under color of law; there was no nexus, no joint action, and no allegations of conspiracy or official cooperation between the government and the Committee. *Id.* The Committee was merely attempting to follow the Bankruptcy Code and Wisconsin law in determining what property belongs to the estate. *Id.*

There are only two instances in which a private party might be construed to be a government actor; neither is implicated here. First, a private party might be subject to RFRA if "acting under color of law." 42 U.S.C. § 2000bb-2(1); *Brownson v. Bogenschutz*, 966 F. Supp. 795, 798 (E.D. Wis. 1997). That occurs *only* when the "state has so implicated itself in the defendant's action that the state has in effect compelled the action*." Starnes v. Capital Cities Media, Inc*., 39 F.3d 1394, 1396 (7th Cir. 1994). Simply following generally applicable law such as the provisions of the Bankruptcy Code, as the Committee does in the performance of its duties, does not constitute acting under color of law. Under Appellant Listecki's theory, a

DOCS_LA:267783.8 05058/003

corporation could then be considered to be a government actor solely because it is created by

operation of law and operates under legal restraints. That is absurd. It is also telling that

Cemetery Trust's Amended Complaint does not allege that the Committee has acted under color

of law. It is a nonsensical theory. Rather, the Committee has and is acting solely as a private

actor.[8]

Second, a private actor might be subject to a RFRA claim if it "willfully participated in

joint action with state officials." *Starnes*, at 1396. Appellant Listecki provides no evidence—

nor can he--that the Committee has acted with any state official, let alone willfully participated in

joint action with state officials. The Committee is a collection of independent, individual,

private creditors of the Debtor who represent the interests of a larger class of unsecured creditors.

A committee acts on behalf of the members of its constituent class and has a fiduciary duty to

protect the interests of that class. *See In re Smart World Technologies, LLC,* 423 F.3d 166, 175

n. 12 (2d Cir. 2005). While the United States Trustee's Office appoints the members of a

committee (subject to their agreement to serve), a committee elects its own chairperson, enacts

its own bylaws, and functions entirely independently of the Office of the United States Trustee.

It acts independently to, among other things, consult with the debtor in possession on

administration of the case, investigate the debtor's conduct, business operations, assets and

liabilities, and participate in formulating a plan. 11 U.S.C. § 1103. The committee's expenses

---

[8] *Blixseth v. Brown*, 470 B.R. 562, 566 (D. Mont. 2012), does not support Archbishop Listecki's argument that the Committee is acting under color of law for the purpose of RFRA. In that case, the district court merely found that a suit alleging breach of official duties against the chairman of the official committee of unsecured creditors was a suit against a court-approved official and therefore, the plaintiff was required to first obtain leave of the bankruptcy court before it initiates an action in another forum against him for acts done in his official capacity. Nor does *In re Adelphia Comm. Corp.*, 544 F.3d 420 (2d Cir. 2008) support the argument. That case does not even address the issue of acting under color of law.

(11 U.S.C. § 503 (b)(3)(f)) and the fees and expenses of its professionals (11 U.S.C. §§ 330 (a)(1), 503(b)(2)) are paid by the debtor's estate, not by any governmental entity.

Appellant Listecki also argues that the Committee is acting under color of law because "it has the authority to engage the Trust, through its Trustee, in a contest over $55 million solely because a federal judge under federal law has permitted it do so." [Appellant's Brief at 23.] The Bankruptcy Court certainly did not compel the Committee to act and, in fact, played no role in the Committee's decision to seek to recover the $55 million for the estate. The Debtor was the one who did that. The *Debtor* voluntarily chose to file for bankruptcy protection and thereby became a fiduciary for creditors obligated to pursue bona fide fraud claims. The Committee is defending the Amended Complaint and seeking to recover the fraudulently transferred funds because the *Debtor* refused to do so (the Archbishop having a disabling conflict). Furthermore, the Committee is acting with the consent of the Debtor, on behalf of the estate, pursuant to the Standing Stipulation. If bankruptcy court approval of an agreement between a creditor and a debtor were sufficient to find that a creditor is acting under color of law, then virtually every creditor in a chapter 11 case is a government actor. If the Committee is being compelled by or acting in concert with anyone, it is the Debtor.

Courts have held, in other contexts, that creditors' committees are non-government private parties, and that their actions in connection with a bankruptcy cannot be viewed as governmental actions or as part of a government action. *See In re Dow Corning Corp*., 255 B.R. 445, 523 (E.D. Mich. 2000) (rejecting the argument that an approved joint plan of reorganization proposed by the debtor and the creditors' committee violated a creditor's constitutional rights

and noting, "Appellants have cited no authority that a Bankruptcy Court or any court's approval of an order establishes a governmental action. A governmental action is required to state a constitutional claim and a 'mere approval of or acquiescence in the initiatives of a **private party** is not sufficient to justify holding the government responsible for those initiatives'.") (emphasis added) (citations omitted); *Fuel Oil Supply and Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286 (5th Cir. 1985) (holding that a creditors' committee did not have an unconditional right to intervene in an adversary proceeding and stating, "Courts have been hesitant to find unconditional statutory rights of intervention . . . . [t]he statutes that do confer an absolute right to intervene generally confer that right upon the United States or a federally regulatory commission; **private parties** are rarely given an unconditional statutory right to intervene.") (emphasis added).[9]

The filing of the Amended Complaint by Appellant Listecki against the Committee did not institute a suit against the government, or against a private actor acting under color of state law or jointly with the government. To allow Appellant Listecki's RFRA claims to proceed against a non-government actor like the Committee would require the Court to create a new federal cause of action which is not provided for in the statute. The creation of this new cause of action is the sole province of Congress. On the basis of the plain language of the statute, Appellant Listecki may not assert RFRA claims against the Committee.

---

[9] The Cemetery Trust appears to have conceded that the Committee is a private, nongovernmental party. If the Committee were an instrumentality or branch of the United States, Federal Rule of Bankruptcy Procedure 7004 would have required Appellant to serve the summons on the Office of the United States Attorney and the Attorney General. Fed. R. Bankr. P. 7004(i). It did not do so. Instead, the summons was served on counsel to the Committee under the rule for non-government private actors. Fed. R. Bankr. P. 7004(e). [ER, Tab 17, Doc. No. 13-1, at 26.]

DOCS_LA:267783.8 05058/003

Appellant Listecki also attempts to rely on the Bankruptcy Court's "oversight" features, such as the fact that the bankruptcy court can order the Office of the United States Trustee to change the Committee's membership, must approve committee members' expenses and must approve the employment and payment of a committee's professionals, to argue that the Committee is acting under color of law. [Appellant's Brief at 29.] The same can be said, however, of the bankruptcy court's power over all major parties in any chapter 11 case. For example, a bankruptcy court can oust the debtor in possession's management by appointing an examiner or a chapter 11 trustee for, among other things, fraud, dishonesty or mismanagement. 11 U.S.C. § 1104. Surely, the fact that the court can order that the debtor be managed by a court-appointed trustee does not make the debtor a government actor. As to the employment and compensation of professionals, the bankruptcy court has to approve the employment and compensation of the debtor's professionals as well as the committee's. That supervision, however, does not transform the debtor, the committee, or the professionals brought into a case into government actors.

Without citing a single case that supports its position, Appellant Listecki also contends the Committee is an "instrumentality" or "official"[10] under RFRA. The Committee is neither. An "instrumentality" is an entity that carries into execution Congress' specified powers. *See*

---

[10] The Cemetery Trust cites *Hall v. American Nat. Red Cross*, 86 F.3d 919 (9th Cir. 1996), to support its argument that the Committee is an instrumentality of the government. [Appellant's Brief at 23-24.]. To the contrary, in holding that the American Red Cross was not an "instrumentality" under RFRA, the Ninth Circuit stated, "We find that Congress did not intend the Act to create a broader class of government actors than previously existed under the Free Exercise Clause of the First Amendment. . . . Thus, the use of the word "instrumentality" in a general, inclusionary definition does not indicate an intention to encompass entities which are not a part of the government, even though they may be governmental "instrumentalities" in some sense. " *Id.* at 921.The Committee is obviously not a covered entity, which is defined by Congress as "the District of Columbia, the Commonwealth of Puerto Rico, and each territory and possession of the United States." 42 U.S.C. § 2000bb-2(2).

DOCS_LA:267783.8 05058/003

*generally McCulloch v. State of Md.*, 17 U.S. 316, 396 (1819).  The Committee is not ordained specifically by Congress to carry out Congress' work, and thus cannot be summarily labeled an "instrument" for the purposes of RFRA.

### 4. *In re Barman*, 252 B.R. 403 (Bankr. E.D. Mich. 2000) is distinguishable.

Similarly, no authority exists for Appellant Listecki's argument that a committee in a chapter 11 proceeding is an official.  [Appellant's Brief at 29.]  The Bankruptcy Court rejected the notion that a chapter 7 trustee's connection to the U.S. Trustee gives the trustee status as a government actor.  *In re Archdiocese of Milwaukee*, 485 B.R. at 391.  Appellant Listecki relies on a single bankruptcy case from the Sixth Circuit *(In re Barman*, 252 B.R. 403 (Bankr. E.D. Mich. 2000)) to attempt to analogize the Committee to a chapter 7 trustee acting in concert with a U.S. Marshal.  This analogy does not hold. In *Barman*, a chapter 7 trustee contended that the debtor had fraudulently concealed assets and filed an ex parte motion for an order authorizing him, *in conjunction with a U.S. Marshal*, to enter the debtor's residence to inspect and inventory the debtor's personal property.  *Id.* at 407.  After the trustee obtained permission, and executed the search with the U.S. Marshal, the debtor moved to suppress evidence obtained on Fourth Amendment grounds.  In a case of first impression, the bankruptcy court held, "these circumstances surrounding the status and function of a trustee in a chapter 7 case all suggest a sufficient nexus to the government and its power that it is necessary and appropriate to apply to the trustee the fourth amendment limits on government power." *Id.* at 412–13.

25

Whether the *Barman* court was correct is debatable.[11]  What is clear, however, is that *Barman* is not applicable to this case, which the Bankruptcy Court noted when it rejected *Barman*'s relevance to this case and distinguished its facts from those in the present case.  *In re Archdiocese of Milwaukee*, 485 B.R. at 391.  The role of a chapter 7 trustee is fundamentally different than the role of a committee. A committee is a collection of independent, individual, private creditors of the debtor that represents the interests of a larger class of unsecured creditors. The trustee's duties under Bankruptcy Code section 704(a) are voluminous and mandatory.  By comparison, a committee's duties under Bankruptcy Code section 1103(c), all of which are permissive, are relatively minor.

The Bankruptcy Court correctly distinguished *Barman*, noting that the trustee in that case was acting under the color of law partially because the U.S. Marshal had accompanied the trustee to the debtor's residence.  *In re Archdiocese of Milwaukee*, 485 B.R. at 391.  However, Appellant contends that in *Barman*, the U.S. Marshal's presence was not dispositive for a finding of acting under the color of law.  [Appellant's Brief at 30.]  Even if that is a correct interpretation of the court's findings in *Barman*, Appellant Listecki concedes that the extent of government control over the trustee in that case was sufficient to find that the trustee was acting under color of law. To the contrary, here, the U.S. Trustee has far less control over a creditors' committee than over the chapter 7 trustee in *Barman*.  *In re Archdiocese of Milwaukee*, 485 B.R. at 391.  The U.S.

---

[11] *See In re Kerlo*, 311 B.R. 256, 265 (Bankr. C.D. Cal. 2004) ("Trustees in bankruptcy are not law enforcement officials. As previously discussed, a trustee is required to assemble assets of the estate, liquidate those assets for the benefit of creditors, and distribute proceeds of the estate to creditors. Although trustees may seek the assistance of governmental officials in carrying out their statutory and fiduciary duties and orders of the court, they do not act to assist the government in its investigatory or administrative activities. Rather, the trustees act independently under their statutory mandate in the Bankruptcy Code. Accordingly, a trustee or agent to a trustee is only subject to the Fourth Amendment if (1) the government knew of and acquiesced in the conduct and (2) the trustee acted with the intent to assist the government in its investigatory or administrative purposes.").

DOCS_LA:267783.8 05058/003

Trustee establishes, maintains and supervises panels of chapter 7 trustees, whereas it merely *monitors* creditors' committees. *See* United States Department of Justice, *Handbook for Chapter 7 Trustees,* at 1-1 (2012). The U.S. Trustee actually recruits individuals to be members of the chapter 7 trustees' panel, appoints them to the panel, and assigns them to chapter 7 cases. *Id.* at 2-3. In addition, the U.S. Trustee supervises their performance, provides regional, national and local training, and gives performance reviews to chapter 7 trustees. *Id.* at 6-1, 6-2. The U.S. Trustee also periodically conducts audits, field exams, and case administration reviews of a chapter 7 trustee's accounting and case administration activities (*Id.* at 6-3) and can suspend a trustee from the panel. *Id.* at 6-5. None of these things can be said of the U.S. Trustee's monitoring function with respect to a creditors' committee.

> ### 5. The fact that the Committee members may enjoy qualified judicial immunity for acts performed in their official capacity does not turn the Committee members into government actors.

Appellant Listecki further argues that the limited judicial immunity granted to a trustee in bankruptcy is evidence that trustees, and, reaching even further, a committee, are acting under color of law, in reliance on language in *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096 (9th Cir. 1986), as cited in *Szeklinski v. Neary*, No. 07-C-222, 2007 WL 777539, at *1 (E.D. Wis. Mar. 12, 2007) (unreported). [Appellant's Brief at 31.] Appellant relies on *Lonneker* and *Neary* to reason that the availability of qualified immunity proves that the Committee is a government actor. None of the cases cited by Archbishop Listecki support this argument.

First, neither *Lonneker*, nor *Neary* deal with creditors committees, so they are entirely irrelevant. *Lonneker* merely acknowledges that a chapter 7 trustee, acting under the authority

27

given to him by the bankruptcy court, is entitled to derived judicial immunity for acts within the course and scope of his duties. 804 F.2d at 1097; *accord Szeklinski v. Neary*, No. 07-C-222, 2007 WL 777539, at *1 (E.D. Wis. Mar. 12, 2007) (unreported) (addressing the qualified immunity for employees of the U.S. Trustee's office). Neither *Lonneker* nor *Neary* state that because a chapter 7 trustee or U.S. Trustee is entitled to qualified immunity, he or she is, therefore, acting under color of law. These are two different concepts.

Second, the other cases cited by Archbishop Listecki merely discuss the fact that committee members are entitled to implied qualified immunity for actions taken within the scope of their duties.[12] None of the cases state that this qualified immunity turns committee members into government actors for RFRA, the Bill of Rights or any other federal statute. And why would any creditor ever agree to sit on a creditors committee if it did not have qualified immunity? These are ordinary people, laypeople, who are assisting in a complicated reorganization process. In the same way that members of the board of directors of a nonprofit or a for profit corporation are protected from acts of ordinary negligence by directors and officers insurance, members of a creditors committee are protected by implied qualified immunity. It does not turn them into the government for RFRA or otherwise. Qualified immunity for a Committee is more like the

---

[12] *See In re Drexel Burnham Lambert Grp.*, 138 B.R. 717 (Bankr. S.D.N.Y. 1992), *aff'd* 140 B.R. 347 (S.D.N.Y. 1992) (approving a release provision in a plan of reorganization that released all claims against equity committee members other than those for willful misconduct); *In re Walnut Equip. Leasing, Co.*, 2000 WL 1456951 (holding that qualified immunity extends to conduct within the scope of the committee's statutory or court-ordered authority); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (presidential aids entitled to qualified immunity); *Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (private party not entitled to qualified immunity in a civil rights action); *Morneau v. Connecticut*, 605 F.Supp.2d 372 (D. Conn. 2009) (members of a state marshalls' commission entitled to qualified immunity from a civil rights action).

limited liability of a corporation or D&O insurance for directors than it is like the qualified immunity of a government actor.

There is no trustee in this chapter 11 case, so the representative of the estate is the Archdiocese itself, and the Committee is acting, in general, within the scope of its limited duties set forth in section 1103(c), which are primarily participatory, not directive. With respect to this adversary proceeding specifically, Appellant Listecki asserts that because the Bankruptcy Court granted the Committee permission to bring counterclaims against the Cemetery Trust derivatively on behalf of the bankruptcy estate, the Committee is essentially acting on behalf of the court. This is not true. The Debtor entered into a written agreement with the Committee granting the Committee permission to bring the avoidance action claims against the Cemetery Trust derivatively on behalf of the Debtor's estate. It did so because the Debtor could not and would not defend or bring affirmative claims against the Cemetery Trust, which is not unsurprising given its monumental conflict. The Debtor is run by Archbishop Listecki, who is also the trustee of the Cemetery Trust. The Committee, therefore, is acting on behalf of the Archdiocese's estate (a private actor) by virtue of rights granted by the Archdiocese (a private actor) and for the benefit of the Archdiocese, its estate and its creditors (all private actors), not the court. Furthermore, this adversary proceeding was initiated by the Archbishop Listecki against the Committee for a declaratory judgment that the assets of the Cemetery Trust are not property of the estate under section 541. Appellant Listecki chose to sue the Committee rather than the Archdiocese for a determination of what assets constitute property of the estate, and then

asserted RFRA as an affirmative claim for relief against the Committee. This is very different from *Barman* in which a chapter 7 trustee acted in concert with a U.S. Marshal.

Appellant Listecki further argues that the Committee is a government actor because it was created by operation of law and operates with certain statutory powers. [Appellant's Brief at 28-33.] This argument proves much too much. State and federal laws create many private arrangements, and then grant them certain powers. Yet, those entities created by operation of law are private. For example, corporations are creations of law. *See In re Matter of Morris*, 30 F.3d 1578, 1582 (7th Cir. 1994). In addition, they have certain powers designated by law, such as the power to own and sell property, to pay taxes, and to limit liability. Yet, no court would hold that a corporation is a government actor simply because it was created by law and/or operates with certain powers legally delegated to it.

The Cemetery Trust itself was created by operation of Wisconsin state law, and it operates under the restrictions and powers granted to it by state law.[13] Under Appellant Listecki's legal theory, the Cemetery Trust should be a government actor itself because it was created by operation of law and its powers are defined by law. [Appellant's Brief at 29.] If, as its theory would entail, the Cemetery Trust were a government actor, its free exercise claims would be barred. Governments do not have the power to assert constitutional rights, and there is no question that the language of RFRA does not create a private right of action on behalf of government. *See* Timothy Zick, *Statehood as the New Personhood: The Discovery of*

---

[13] The Cemetery Trust admits that it is governed by Wisconsin law. [ER, Tab 3, Doc. No. 13-2, at 111, ¶ 1.2 ("This instrument . . . shall be governed, enforced and interpreted in accordance with the laws of the State of Wisconsin . . ."); ¶ 1.1.11 ("The Trustee is a "trustee" within the meaning of Wisconsin Statutes Section 701.01(8) . . .")].

30

*Fundamental "States' Rights,"* 46 WM. & MARY L. REV. 213, 218-19 (Oct. 2004). Thus, if this Court adopted Appellant Listecki's theory of what constitutes a government actor, the Cemetery Trust itself would have to be categorized as a government actor and it could assert no free exercise rights.

### 6. The RFRA claims against the Committee fail as a matter of law.

The Bankruptcy Court correctly reasoned that the RFRA claims are improper in this case, both because the Committee is not a government actor, and because in determining what assets belong to the bankrupt estate, the Committee is required to follow Wisconsin trust law. *In re Archdiocese of Milwaukee*, 485 B.R. at 392. As the plain language of RFRA creates a cause of action only against "a government" and a creditors' committee is a private party, Appellant's RFRA claims must fail as a matter of law. The plain language of a statute controls its interpretation, and federal courts must first look to the language of a statute to determine its meaning. *See e.g., Caminetti v. U.S.*, 242 U.S. 470, 485 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed…"); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (holding that when the language of a statute is clear, courts should enforce it pursuant to its literal meaning).

It is particularly necessary for courts to follow a legislature's plain meaning when the subject is the existence of a cause of action. *Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (citations omitted); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571

(1979) (noting that where plain language of the statute did not provide for a cause of action, courts must assume Congress did not intend to create one).

The fundamental principle of separation of powers is violated if courts ignore the plain language of the statute and create a right of action where it is not provided for in the statute. This is an impermissible judicial rewrite of the statute. *See, e.g., Touche Ross v. Redington*, 442 U.S. at 568 ("The question of the existence of a statutory cause of action is, of course, one of statutory construction . . . And as with any case involving the interpretation of a statute, our analysis must begin with the language of the statute itself."); *Int'l Union of Operating Eng'rs, Local 150 v. Ward*, 563 F.3d 276, 282 (7th Cir. 2009) ("Whether express or implied, however, we remain mindful that it is Congress, not this or any other court, that creates private causes of action to enforce federal law."), *cert. denied*, 558 U.S. 947 (2009); *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (Without plain congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.").

To permit Appellant Listecki to assert RFRA against a private party (or as a defense to claims by a private party) would require this Court to create a new cause of action in violation of the plain meaning of the statute and the constitutionally mandated separation of powers. The Seventh Circuit has articulated precisely this view, succinctly stating in dictum that ***"RFRA is applicable only to suits to which the government is a party."*** *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir. 2006), *cert. denied*, 549 U.S. 881 (2006), *abrogated on other grounds, Hosanna-Tabor Evangelical Lutheran Church School v. EEOC*, ___ U.S. ___,

132 S.Ct. 694, 181 L.Ed. 2d 650 (2012). Accordingly, the Seventh Circuit Court of Appeals has never entertained a RFRA claim against a non-government actor, which the Appellant Listecki fails to acknowledge.

Furthermore, the Courts of Appeals for the Sixth, Ninth and Second Circuits have also held that RFRA is only applicable to suits to which the government is a party. *See General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010), *cert. denied*, 2011 WL 1457562 (2011); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 839 (9th Cir. 1999); *Hall v American Nat'l Red Cross*, 86 F.3d 919, 923 (9th Cir. 1996), *cert. denied,* 519 U.S. 1010 (1996); *Rweyemamu v. Cote*, 520 F.3d 198, 204, n.2 (2d Cir. 2008) (dictum).[14] *See also Williams Island Synagogue, Inc. v. City of Aventura*, 222 F.R.D. 554, 557 (S.D. Fla. 2004) (interpreting same language to mean free exercise case can only be brought against government), *aff'd*, 138 Fed. Appx. 299 (11th Cir. 2005); *Warner v. City of Boca Raton*, 887 So. 2d 1023, 1032 (Fla. 2004) (same).[15]

Appellant cites to *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 468–69 (D.C. Cir. 1996), as a case where the courts have allowed RFRA claims to go forward against private parties. [Appellant's Brief at 35.] However, the court there did not address the fact that the appellant in

---

[14] In 2006, a divided Second Circuit panel held that RFRA could be applied in a case involving two private parties, but only because a government entity, the Equal Employment Opportunity Commission, could have been a party to the case. *See Hankins v. Lyght*, 441 F.3d 96, 103 (2d Cir. 2006). Then-Judge Sotomayor disagreed, explaining in her dissent, "All of the examples cited in the Senate and House Reports on RFRA involve actual or hypothetical lawsuits in which the government is a party. The lack of even a single example of a RFRA claim or defense in a suit between private parties in these Reports tends to confirm what is evident from the plain language of the statute: It was not intended to apply to suits between private parties." *Id*. at 115, n.9. The *Hankins* decision is not factually on point and was significantly weakened by the subsequent decision in *Rweyemamu*.

[15] Appellant Listecki also invokes the Ninth Circuit's decision in *Worldwide Church of God v. Philadelphia Church of God, Inc*., 227 F.3d 1110, 1120-21 (9th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001), which also does not support its extreme interpretation of RFRA. In that case, the court refused to decide the question. *Id*. at 1121.

33

that case was suing a private party; the analysis of RFRA's applicability to that case was solely

related to whether or not the ministerial exception rule under the First Amendment had survived

*Employm't Div. v. Smith*, 494 U.S. 872, 879-80 (1990). *See EEOC v. Catholic Univ. of Am.*, The

same is true for Appellant Listecki's reliance on *Guinan v. Roman Catholic Archdiocese*, 42 F.

Supp. 2d 849, 853 (S.D. Ind. 1998), where the court did not address the private party question.

The weakness of Appellant Listecki's argument on this issue is underscored by the fact that the

only cases that purportedly support its view do not even consider the question.

### B.    RFRA May Not Be Applied to Modify, Preempt or Trump State Law

Appellant Listecki also attempts to use RFRA to modify, preempt, or trump state law.

These arguments fail as a matter of law.  In *Boerne*, 521 U.S. 507 (1997), the Supreme Court

held that RFRA was a violation of (1) the inherent limitations of federalism (*Id.* at 534); (2) the

separation of powers (*Id.* at 536), and (3) the procedures for constitutional amendment in Article

V of the Constitution (*Id.* at 529).[16]  At a bare minimum, RFRA is beyond Congress's power to

regulate the states and any attempt to modify, preempt, or trump state law through RFRA is

unconstitutional.

At issue in this adversary proceeding is whether the funds held in the Cemetery Trust

and/or the Cemetery Trust itself are property of the estate and whether transfers of property from

the Debtor to the Cemetery Trust may be avoided.  While Bankruptcy Code section 541 defines

what property of the debtor's becomes part of the bankruptcy estate, the nature and extent of the

debtor's interest in that property is governed by state law.  *See Butner v. United States,* 440 U.S.

---

[16] Were this Court to overturn the Bankruptcy Court's Order Granting Partial Summary Judgment, the Committee reserves its rights to contest whether RFRA is constitutional as applied to federal law.

48, 55 (1979). In order to determine whether funds transferred to the Cemetery Trust are property of the Debtor's estate, the Court will have to determine, for example, whether the funds transferred by the Debtor to the Cemetery Trust were held in a resulting trust under Wisconsin law prior to the time they were transferred as alleged by the Debtor and the Cemetery Trust and whether the Cemetery Trust is void as a self-settled trust in which the Debtor is a beneficiary pursuant to Wisconsin Statutes section 701.06 (6). RFRA cannot apply to a determination of a status of property that is governed solely by state law. *In re Roman Catholic Archbishop of Portland in Oregon,* 335 B.R. 842, 860 (Bankr. D. Or. 2005) ("I question whether RFRA applies at all to a determination of what is property of the estate under § 541. Section 541 merely defines what property is included in a bankruptcy estate; issues such as ownership of property are determined by application of state law. It is not clear to me how RFRA applies to a determination of a status, that is, ownership of property, that is a result of application of state law.").

Appellant Listecki argues that RFRA can apply to state law vis-a-vis congressional power pursuant to Article I, but this is a fundamental misreading of RFRA. [Appellant's Brief at 43.] After RFRA was held unconstitutional under *Boerne*, Congress re-enacted RFRA to apply explicitly to federal law only. "The *Boerne* decision struck down RFRA as being outside the scope of Congress' enforcement authority under section 5 of the 14th Amendment. The 14th Amendment allows Congress to protect individual rights against State infringement. It would appear, therefore, that RFRA is still valid as to the Federal Government." *Protecting Religious Freedom After Boerne v. Flores: Hearing Before the Subcomm. on the Const. of the House of Rep. Comm. On the Judiciary*, 105th Cong. 55 (1997). During debates and testimony after

*Boerne* to re-enact RFRA and create a new version of RFRA, a lead sponsor noted that, "after *Boerne* the courts will apply RFRA solely to the Federal Government and not to the States." 145 Cong. Rec. H5580-02, (daily ed. July 15, 1999) (statement of Rep. Charles Canady). Furthermore, originally, RFRA applied "to all Federal and State law," Pub. L. No. 106-274, 114 Stat. 803 (2000). Now, RFRA explicitly limits its application "to all Federal law." 42 U.S.C. § 2000bb-3. Thus, it doesn't matter what power Appellant Listecki says might justify applying RFRA to state law--it does not and cannot be applied to state law.

The underlying cause of action for the recovery of the fraudulent conveyance itself is brought under state law. [17] Five of the fraudulent transfer counterclaims are brought under Wisconsin state law (in conjunction with the standing granted to the Committee pursuant to Bankruptcy Code section 544 (b)), specifically: the Seventh Counterclaim (Bankruptcy Code §§ 544(b), 550 and Wis. Stats. §§ 242.04(1)(b), 242.07), the Eight Counterclaim (Bankruptcy Code §§ 544(b), 550 and Wis. Stats. §§ 242.05(1), 242.07), the Twelfth Counterclaim (Bankruptcy Code §§ 544(b), 550 and Wis. Stats. §§ 242.04(1)(a), 242.07), the Fourteenth Counterclaim (Bankruptcy Code §§ 544(b), 550 and Wis. Stats. §§ 242.04(1)(b), 242.07), and the Fifteenth Counterclaim (Bankruptcy Code §§ 544(b), 550 and Wis. Stats. §§ 242.05(1), 242.07).

Any "substantial" burden that is placed on a transferee's religious practice is imposed on it by the recovery of the transfer itself, which is effectuated under state law. *Boerne* prohibits the application of RFRA to these claims for relief. Allowing the Cemetery Trust to obtain insulation

---

[17] Bankruptcy Code section 544 provides, "(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502 (e) of this title." 11 U.S.C. 544(b)(1).

from avoidance actions as the result of the Debtor's election to file a chapter 11 petition flies in the face of logic, common sense and the clear purpose of the Bankruptcy Code.[18] As state law may not be re-interpreted through the lens of RFRA, summary judgment should be granted on the RFRA claims.

### III. Summary Judgment Was Appropriately Granted Against the Appellant for Claims Under the First Amendment Free Exercise Clause and Should Be Affirmed

Appellant Listecki also argues its rights to the free exercise of religion are unconstitutionally burdened by <u>any</u> provision of the Bankruptcy Code whose application would result in the funds held in the Cemetery Trust becoming property of the Debtor's estate.[19] [Appellant's Brief at 45.]

#### A. The First Amendment Is No Defense to Claims Between Private Parties

While RFRA is explicit that it may only be used against "a government," constitutional rights occasionally, though rarely, may be asserted against private actors. As a matter of well-established law, a private party can be viewed as a government actor "only in rare circumstances." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). A private party is not liable for constitutional violations unless it was operating "under color of law" (addressed above)

---

[18] See *Committee of Tort Litigants v. Catholic Diocese of Spokane (In re Catholic Diocese of Spokane)*, 329 B.R. 304, 324 n.5 (Bankr. E.D. Wash. 2005). ("The Code is an integrated statutory scheme. Bankruptcy debtors who voluntarily choose to participate in that statutory scheme, even those of a religious nature, should not be able to pick and choose among Code sections.") (citations omitted), *reversed in part*, 364 B.R. 81, (E.D. Wash. 2006).

[19] The First Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. Amend 1. *See also* W.I. CONST. sec. 18 ("The right of every person to worship Almighty God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend, erect or support any place of worship, or to maintain any ministry, without consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries.")

37

or "willfully participating in joint action with government officials."[20]  To determine whether a private actor can be treated as a government actor under the First Amendment, courts consider whether any of the following three conditions are met: (1) the government has coerced or at least significantly encouraged the action alleged to violate the Constitution; (2) the private party performed a public function, or (3) the government has so insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise.  *See Rayburn v. Hogue,* 241 F.3d 1341, 1347 (11th Cir. 2001).  None of these conditions are met in this case.

The Committee does not begin to meet the requirements to be considered a government actor under the analysis applicable to constitutional claims.  First, the federal government has not coerced or significantly encouraged the Committee to violate the Trust's Free Exercise rights. Nor does the Committee perform a public function. For the "public function" analysis to apply, the function must be one that has traditionally been exclusively the domain of the government. An analogous case, *Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974), considered whether the operation of a private utility, which was licensed and regulated by the state, performed a public function.  The Supreme Court determined that the public function analysis is only applicable where a private entity exercises "powers traditionally exclusively reserved the State." *Id.* at 352. The Committee is not exercising powers traditionally exclusively reserved to the state.  Instead, the Committee is a private group of individuals who are exercising their rights to collect private debts from the Archdiocese.  The state and federal bankruptcy laws are not obligating the state to

---

[20] *See Tower v. Glover,* 467 U.S. 914 (1984); *Harvey v. Harvey,* 949 F.2d 1127 (11th Cir. 1992).

step in.  Bankruptcy laws exist so private parties can reorganize their capital structure and obtain a fair and equitable distribution of the assets of the estate to satisfy primarily private obligations; they do not *require* parties to take action to collect on their debts.  *See also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 161 (1978) (settlement of disputes between debtors and creditors is not traditionally an exclusive public function).

Finally, there is no "joint participation" between the government and the Committee as argued by Appellant Listecki. [Appellant's Brief at 28.]  Although Appellant Listecki invokes *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982), to argue that the Committee is engaged in a joint participation with the government, the facts can be readily distinguished.  There, a creditor sued to collect a debt and obtained a pre-judgment attachment against the property of the debtor, which disabled the debtor from selling it.  To obtain the attachment, the creditor was only required to file an ex parte petition stating that the debtor might dispose of the property.  A clerk of the court issued a writ of attachment, which was then executed by the sheriff.  The Supreme Court specifically found that because the clerk and sheriff acted *together* with the creditor, the creditor's action in obtaining the attachment was a state action.  *Id.* at 941.  Here, there are no such government actors who are working in conjunction with the Committee.  Rather, the Committee is a private party and is operating appropriately under a statute.  Free exercise claims under neither RFRA nor the Free Exercise Clause can be brought against the Committee because it is a private party.

DOCS_LA:267783.8 05058/003

**B.  Appellant Listecki's First Amendment Arguments Also Fail on the Merits**

While Appellant Listecki did not identify the allegedly unconstitutional provisions of the Bankruptcy Code in his Amended Complaint, he appears to argue, for example, that even if the Cemetery Trust was not validly formed or is voidable under Wisconsin law, Bankruptcy Code section 541 cannot be constitutionally applied to determine the status of the assets in the Cemetery Trust as property of the estate.  Appellant Listecki also appears to argue that even assuming that the Debtor fraudulently transferred the $55 million (and/or other funds) to the Cemetery Trust, the avoidance provisions, including section 544 of the Bankruptcy Code and/or Wisconsin law cannot be constitutionally applied to recover the fraudulently transferred funds.[21]

This is an indefensible argument, as was correctly recognized by the Bankruptcy Court. *In re Archdiocese of Milwaukee*, 485 B.R. at 393..  It is well settled that neutral, generally applicable laws are subject to rationality review under the First Amendment's Free Exercise Clause.  *Vision Church v. Vill. Of Long Grove*, 468 F.3d 975, 1001 (7th Cir. 2006) (finding that the municipal ordinances challenged by the church did not classify on the bases of race, national origin, or religion, and therefore applying only rational basis scrutiny to the Church's claims, noting that the Church must demonstrate "governmental action wholly impossible to relate to legitimate governmental objectives"), *cert. denied*, 552 U.S. 940 (2007); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762-65 (7th Cir. 2003) (holding Chicago Zoning Ordinance, as a law of neutral general applicability did not violate Free Exercise Clause with respect to churches required to apply for special use permit and affirmed the district court's

---

[21] The Committee assumes that Archbishop Listecki's constitutional argument applies to, at the very least, sections 541, 542, 544, 547, 548 and 549 (the "Challenged Bankruptcy Provisions").

DOCS_LA:267783.8 05058/003

holding that the zoning ordinance satisfied rationality review), *cert. denied*, 541 U.S. 1096 (2004).

Rationality review requires no more than a showing that the government has a rational basis for the law. *See Sherbert v. Verner*, 374 U.S. 398, 406 (1963); *St. Johns United Church of Christ*, 502 F.3d 616, 637-38 (7th Cir. 2007) ("If no fundamental rights or suspect categories are at issue, '[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'") (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

A more exacting standard – strict scrutiny – is reserved for instances in which the law is either not neutral or not generally applicable. *See Employm't Div. v. Smith*, 494 U.S. 872, 879-80 (1990)*; Sherbert v. Verner*, 374 U.S. at 406; *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 542 (1993) ("These ordinances are not neutral, and the court below committed clear error in failing to reach this conclusion." Therefore, strict scrutiny was required.). Strict scrutiny requires the government to show that there is a compelling interest supporting the law and that the law is narrowly tailored to the ends sought. *See Lukumi,* 508 U.S. at 531-32.

The Challenged Bankruptcy Provisions are neutral and generally applicable and, therefore, constitutional under the Free Exercise Clause. *In re Archdiocese of Milwaukee*, 485 B.R. at 392-93. *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d at 752 (municipal zoning ordinance that was amended to treat churches equally with secular assemblies was found to be both neutral and generally applicable, and thus not in violation of statutory and constitutional prohibitions on the free exercise of religion, and Appellant churches found

DOCS_LA:267783.8 05058/003

locations in the city); *In re Gomes*, 219 B.R. 286, 295-96 (Bankr. D. Or. 1998) (finding sections 548 (a)(2) and 544 (b) neutral and generally applicable, because each has a clear secular purpose, the primary effect of which neither advances nor inhibits religion, the statutes are constitutional); *In re Bloch*, 207 B.R. 944, 950 (Bankr. D. Colo. 1997) (finding section 548(a) to be both "neutral and generally applicable and its effect on the practice of tithing purely incidental to the practice of equal distribution to an insolvent debtor's creditors.").

Section 541 is also neutral with respect to any religion as it merely identifies what state-defined property is included in the bankruptcy estate. As noted above, in *In re Roman Catholic Archbishop of Portland in Oregon*, 335 B.R. 842, 860 (Bankr. D. Or. 2005), the court questioned how enforcing bankruptcy and state law to determine what property was part of the bankruptcy estate could substantially burden religion at all. "A determination under § 541 is simply a determination of status, that is, who owns property. It is hard to understand how the court's determination of what constitutes property of the bankruptcy estate under § 541 could impose a substantial burden on the exercise of religion." *Id.* at 861.

With regard to the Bankruptcy Code's strong-arm and avoiding powers (sections 544, 547, 548, 549), their neutral purpose has been characterized as follows:

> One of the underlying notions of avoiding powers [within bankruptcy law] is the idea that private agreements that might be good for the debtor and a single creditor (in this case, the church) might not be good for creditors as a whole. Advocates for churches sometimes seem to forget that the money recovered by the trustee is intended for unsecured creditors whom, after all, the debtor has also promised to repay.

Mary Jo Newborn Wiggins, A Statute of Disbelief?: Clashing Ethical Imperatives in Fraudulent Transfer Law, 48 S.C. L. Rev. 771, 784 (1997). None of the Challenged Bankruptcy Provisions

were drafted to target religious actors, and they do not operate to single out religious actors.

Quite to the contrary, they operate neutrally and generally across all those debtors, religious or

not religious, who would choose to file for voluntary bankruptcy, and all creditors affected by

such filings and/or other transferees that might be the target of an avoidance action. Thus, under

the Free Exercise Clause, rationality review governs their constitutionality.

> Without a doubt, the avoidance provisions serve a rational interest:

> At the heart of bankruptcy's fraudulent transfer law lies the notion that creditors
> should be protected from attempts (actually or constructively fraudulent) to
> deplete assets that would have otherwise gone to deserving creditors. Because of
> this notion, even innocent actions that would be permissible outside of bankruptcy
> are not permissible inside of bankruptcy, or when a bankruptcy is likely.

Wiggins, *supra, A Statute of Disbelief?*, 48 S.C. L. Rev. at 780. Therefore, the Challenged

Bankruptcy Provisions can be applied to the Cemetery Trust without concern that the First

Amendment is being abridged. *See United States v. Kras*, 409 U.S. 434, 446-47 (1973) (holding

that in general, right to discharge in bankruptcy proceeding is "legislatively created benefit," not

fundamental right); Wiggins, *supra, A Statute of Disbelief?,* 48 S.C. L. Rev. at 787 (noting as to

First Amendment exemptions from neutral bankruptcy conveyance law "[o]ne problem with this

approach is that it has the effect of diverting value that would otherwise go to creditors, but for

the exemption. Because this exemption covers only religious transfers, private and public

creditors are being forced to subsidize the churches of bankrupt debtors.").

> Even if strict scrutiny were applied under the Wisconsin Constitution or if it were

required by the First Amendment, the challenged Bankruptcy Provisions would stand because

they serve a compelling interest. *See In re Newman*, 183 B.R. 239, 252 (Bankr. D. Kan. 1995)

("The compelling nature of the interest is reflected in the fact that recovery of fraudulent

transfers has been a basic tenet of bankruptcy law for 400 years."), *aff'd*, 203 B.R. 468 (D. Kan.

1996).  They are also the least restrictive means to serve the fairness interests at the base of the

fraudulent conveyance provisions.  As the *Newman* court noted:

> Section 548(a)(2) draws a line between proper and improper diminution in what
> would seem to be the only practical way: by determining whether the quantifiable
> economic value received by the debtor is reasonably equivalent to that of the
> property transferred. As stated above, this standard is neutral toward religion and
> can operate to avoid non-religious transfers where no economic value is received
> by the debtor.

*Newman*, 203 B.R. 468, 475, n.4 (Bankr. D. Kan. 1996). *See also In re Meyer*, 467 B.R. 451,

460-61 (Bankr. E.D. Wis. 2012) (finding that even if strict scrutiny were necessary, the Code

withstands "the highest test for constitutionality" and that Congress "demonstrated a compelling

interest in maintaining an equitable system for the protection of creditors and for permitting

debtors to obtain a fresh start from overwhelming debt."); *In re Navarro*, 83 B.R. 348, 353

(Bankr. E.D. Pa. 1988) (pre-RFRA; administration of bankruptcy system and protection of

legitimate interests of creditors are compelling governmental interests); *In re Turner*, 193 B.R.

548, 555-56 (Bankr. N.D. Cal. 1996) (upholding against RFRA challenge § 110 (c) of

Bankruptcy Code requiring petition preparers to place social security numbers on documents for

filing, while noting compelling governmental interest in preventing widespread fraud and abuse

at expense of poor and unsophisticated).  Accordingly, the application of the Challenged

Bankruptcy Provisions violates no rights under the Free Exercise Clause of the First

Amendment.

Appellant Listecki also attempts to rely on *In re Young*, 141 F.3d 854 (8th Cir. 1998), *cert denied*, 525 U.S. 811 (1998), but it is distinguishable. In that case, the Eighth Circuit found that RFRA amended the Bankruptcy Code and "engrafted the additional clause to section 548(a)(2)(A) that a recovery that places a substantial burden on a debtor's free exercise will not be allowed unless it is the least restrictive means to satisfy a compelling governmental interest." *Id.* at 861. Although the court there found that avoiding tithes as fraudulent transfers violated RFRA because protecting the interests of creditors and allowing a debtor a fresh start were not compelling interests, *Young* is distinguishable on several grounds. First, the Committee is suing under state law grounds, which makes *Young* inapplicable. Moreover, under *Boerne*, RFRA may not be applied to a state law cause of action. Additionally, *Young* was decided prior to Congress's subsequent amendment to the Bankruptcy Code under the Religious Liberty and Charitable Donation Protection Act of 1998 ("RLCDPA"), which amended numerous Bankruptcy Code sections to limit the ability of a trustee to recover charitable donations made by a natural person to qualified charitable or religious organizations. *See* 11 U.S.C. §§ 548(a)(2), 548(d)(3), 544(b)(2). If Congress had intended RFRA to amend Section 548 or any other section of the Bankruptcy Code, as the *Young* court claimed, RLCDPA would not have been necessary. Furthermore, tithing cases can be distinguished from avoidance issues in the Cemetery Trust litigation because in the tithing cases, the individual debtor had no choice about how to give the money to the church and no matter how tithing was accomplished, the transfer could be avoided by the trustee. Here, the Debtor could have avoided the application of the fraudulent transfer law by properly holding funds received from the purchasers of the burial rights in a segregated

account pursuant to an express written trust agreement under state law. In addition, in the tithing cases, there is no concern that debtors are tithing to intentionally defraud creditors.

Appellant Listecki contends that the judiciary is barred from reviewing "fundamentally religious doctrinal issues," [Appellant's Brief at 24], and relies on *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, __ U.S. __, 132 S. Ct. 684 (2012), to argue that the ministerial exception should be extended by the same logic to mean that RFRA prohibits a court from evaluating the Debtor's handling of funds. [Appellant's Brief at 24.] However, this is fundamental misreading of *Hosanna Tabor*, which, in fact, is irrelevant to this case. *Hosanna Tabor* dealt solely with the question whether the First Amendment shields a religious organization from civil rights claims by ministers. It is an employment decision, having nothing to do with third parties, like the creditors in this case. *Hosanna Tabor*, 132 S. Ct. at 709. The reasoning is plainly limited to suits between employees and a religious organization, and the sole question whether a minister can invoke the anti-discrimination laws against the religious employer. The decision explicitly distinguished other issues, narrowing its holding, stating:

> [t]he case before us is an employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire her. Today we hold only that the ministerial exception bars such a suit. We express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers.

*Id.* at 710. Likewise, *McCarthy v. Fuller*, Nos. 12-2157, 12-2257, 12-2262, 2013 WL 1442293 (7th Cir. April 10, 2013) (not yet reported), bears no weight in this case; it is a straightforward application of the core holding on the relationship between the employer and employee of *Hosanna Tabor*.

Appellant Listecki would prefer autonomy from all laws, not just the civil rights laws, but nothing in *Hosanna-Tabor* justifies such a reach. Our Constitution institutes a system of ordered religious liberty, not a system of religious autonomy. The United States Supreme Court has never employed the term or the concept "autonomy" to describe its First Amendment free exercise doctrine. Indeed *Hosanna,* the super-majority of the Court never employed the term or concept. Appellant Listecki attempts to import "autonomy" into free exercise doctrine by quoting a concurrence of two Justices, who disagreed with the reasoning of the other seven Justices. [*Appellant's Brief,* at 47.] Their views did not obtain even three votes, let alone a majority, and may not be employed to decide this case.

## IV.     The Court Below Did Not Address Whether There Is a Substantial Burden, and, Even If It Had, the Issue Is Unripe

Appellant Listecki launches into a full-scale premature argument, asserting that a substantial burden has been imposed on its religious exercise, despite the fact the issue was never reached below and is unripe. This Court may not entertain an "appeal" of an issue never addressed below. *Pomerleau v. West Springfield Public Schools*, 362 F.3d 143, 146 (1st Cir. 2004) (stating that "[L]egal theories not raised squarely in the lower court cannot be broached for the first time on appeal"); *Segarra-Miranda v. Perez-Padro*, 482 B.R. 59, 67 (D. Puerto Rico 2012) ("[T]o be reviewable on appeal, the issue at play (whether of fact or law) must have been properly preserved during the challenged proceedings."). This is particularly true in the instance of an interlocutory appeal. As noted above, the Seventh Circuit has said that it is "pointless" to allow interlocutory appeals on questions of fact. *In re Text Messaging Antitrust Litigation*, 630 F.3d 622, 625 (7th Cir. 2010). Finally, as was also noted above, Appellant Listecki raised this

issue in its Cross-MSJ and the Bankruptcy Court specifically declined to entertain this issue or require briefing or discovery on the issue until a later date.

The Bankruptcy Court explicitly declined to rule on the substantial burden issue, noting that it would be inappropriate and unprecedented given the fact that the Committee is not the government. *In re Archdiocese of Milwaukee*, 485 B.R. at 388. The Court correctly stated that ruling on substantial burden under RFRA, the First Amendment, or both, would require a finding that the creditors' committee is the government, and "[t]his is a leap of faith the Court will not make." *In re Archdiocese of Milwaukee*, 485 B.R. at 388. Given the court's direct and clear handling of this issue below, it is frivolous and improper for the Appellant Listecki to now press it.

Even if the court below had addressed the issue, it is inappropriate for this court to consider it, because it is fact-based and unripe. Accordingly, this Court lacks appellate jurisdiction over the issue. As the Bankruptcy Court noted, it is premature to know how much, if any, of the Cemetery Trust's assets might be included in the ultimate plan of reorganization for this Debtor. *In re Archdiocese of Milwaukee*, 485 B.R. at 388. *See also Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 81 (1978). Furthermore, the mere recovery of the transferred funds for the benefit of the estates does not mean that some or all of the money will not be used for the perpetual care of the Debtor's cemeteries.

The ripeness requirement for federal jurisdiction exists for the purpose of ensuring that federal courts have an adequate factual base on which to reach decisions, and do not issue advisory opinions. *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967) ("[I]ts basic rationale is to

prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements").  Any burden or injury in this dispute is purely speculative at this stage.

In the absence of a plan of reorganization, and significant discovery, the Court cannot know what, if any, burden might be imposed on the Cemetery Trust, because "substantial burden" is a fact issue and, requires the development of facts, which have not begun to be established or developed in this case. *World Outreach Ministries Center v. City of Chicago*, 591 F. 3d 531, 539 (7th Cir. 2009); *Newby v. Quaterman*, 325 Fed. Apex. 345, 351 (5th Cir. 2009); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 660 (10th Cir. 2006); *International Church of Foursquare Gospel v. San Leandro*, 673 F.3d 1059, 1068 (9th Cir. 2011).  Appellant Listecki at this time simply cannot show that the mere recovery of the funds for the benefit of the estate will render its religious exercise effectively impracticable.

## CONCLUSION

The Committee respectfully requests this Court dismiss this interlocutory appeal as improperly granted.  In the alternative, it requests this Court affirm the Bankruptcy Court's *Order Granting Partial Summary Judgment*.   Finally, the Committee requests this Court dismiss the substantial burden issues, because they are unripe and, therefore, this Court lacks jurisdiction on this issue.

//

//

//

//

49

Respectfully submitted,

Dated: May 29, 2013

PACHULSKI STANG ZIEHL & JONES LLP

By     _/s/ James I. Stang_
      James I. Stang (CA Bar No. 94435)
      Kenneth H. Brown (CA Bar No. 100396)
      Gillian N. Brown (CA Bar No. 205132)
      Erin Gray (CA Bar No. 157658)
      Pachulski Stang Ziehl & Jones LLP
      10100 Santa Monica Blvd., 13th Floor
      Los Angeles, CA  90067
      Telephone:  (310) 277-6910
      Facsimile:  (310) 201-0760
      E-mail:  jstang@pszjlaw.com
              kbrown@pszjlaw.com
              gbrown@pszjlaw.com

      -and-

      Albert Solochek (State Bar No. 1011075)
      Jason R. Pilmaier (State Bar No. 1070638)
      Howard, Solochek & Weber, S.C.
      324 E. Wisconsin Ave., Suite 1100
      Milwaukee, WI  53202
      Telephone:  (414) 272-0760
      Facsimile:  (414) 272-7265
      E-mail:  asolochek@hswmke.com
             jpilmaier@hswmke.com

      **Attorneys for the Official Committee of
      Unsecured Creditors**

By     _/s/ Marci A. Hamilton, Esq._
      Marci A. Hamilton, Esq.
      36 Timber Knoll Drive
      Washington Crossing, PA  18977
      Telephone: (215) 353-8984
      Email: Hamilton.marci@gmail.com

      **Special Counsel to the Official Committee
      of Unsecured Creditors**

50